**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
INTERNATIONAL MARINE              :
UNDERWRITERS, As Subrogee of     :
WILLIAMS-SONOMA, INC.,            :
                                  :
               Plaintiff,         :
                                  :        06 Civ. 6273 (JFK)
                                  :
     -against-                    :        **OPINION & ORDER**
                                  :
M.V. PATRICIA S, her engines,     :
boilers, etc.; EVERGREEN MARINE   :
CORP.; and MS 'PATRICIA' CONSHIP  :
GmbH & Co. REEDERI KG,            :
                                  :
               Defendants.        :
------------------------------:

APPEARANCES:

        For Plaintiffs:
             James F. Sweeney
             Nicoletti, Hornig, Campise & Sweeney
             88 Pine Street
             Wall Street Plaza
             New York, NY 10005

        For Defendant MS Patricia Conship GmbH and M/V Patricia:
             Alan M. Weigel
             Blank Rome LLP
             405 Lexington Avenue
             New York, NY 10174

        For Defendant Evergreen Marine Corp.:
             Joseph DeMay, Jr.
             Cichanowicz Callan
             Keane Vengon & Textor LLP
             61 Broadway 3000
             New York, NY 10006

**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

This motion to dismiss for lack of personal jurisdiction asks the Court to determine whether a ship and its owner are prima facie bound by the forum selection clause in a bill of lading entered into between an affiliate of a slot-charterer and a shipper ("Bill of Lading"). Because, as discussed in more detail below, the affiliate was specifically mentioned in the slot-charter agreement and because the original charter agreement entered into by the ship's owner contemplated being bound by sub-charterers' bills of lading, the motion to dismiss is denied. This Court has jurisdiction over defendants, pursuant to the forum selection clause in the Bill of Lading.

## Background

Patricia Conship GmbH & Co. Reederi KG ("Patricia Conship") is a German company with its principal place of business in Germany. (Schoning Decl. ¶¶ 3-4.) Patricia Conship owns the M.V. Patricia S. ("MV Patricia"), a 99-meter long, 4,300 ton Antiguan-flag cargo vessel. (Schoning Decl. ¶¶ 9-10.) The MV Patricia has been described as a "feeder" ship, meaning she routinely transports containers to central ports where the containers are then transferred to larger vessels. On October 19, 2004, Patricia Conship chartered the MV Patricia to Sea Consortium Pte. Ltd. ("Sea Consortium") for a period of 24 months ("Time Charter"). The Time Charter provides that "Charterers and/or Agents shall have

2

authority to sign Bill [sic] of Lading on behalf of Masters and/or
Owners." (Ex. C, ¶ 33.)

Sea Consortium sub-time chartered to X-Press Container Line
(UK) Ltd. ("X-Press"). X-Press had a "slot charter" agreement with
Hatsu Marine Limited ("Hatsu"). (Weigel Aff. ¶ 8-9.) A "slot
charter" allows carriers to share space on each other's vessels.
Hatsu is an affiliate of Evergreen Marine Corp. ("Evergreen"), "one
of the world's largest carriers owing [sic] and operating one of
the world's largest fleets." (Pls.' Mem. L. 8 note 6.) According
to the Court's notes from oral argument, held on December 11, 2006,
Plaintiffs' counsel stated that Evergreen was "expressly" mentioned
in the slot-charter agreement.[1] As of November 7, 2006, Evergreen
had 16 slot charters scheduled with the MV Patricia through the end
of 2006, and "Evergreen is repeatedly issuing bills of lading for
containerized cargoes" aboard the MV Patricia. (Pls.' Mem. L. 8
note 6.)

Evergreen exercised its rights under the slot-charter
agreement to sublet slots on the MV Patricia to ship goods for
Williams-Sonoma, Inc. ("Williams-Sonoma") from Portugal to
Tennessee via Rotterdam and South Carolina. The goods were to be
transported on the MV Patricia from Portugal to Rotterdam, and then
transferred to a mother ship operated by Defendant Evergreen.

Three bills of lading (referred to collectively as the "Bill

_____

[1] A court reporter was not present at oral argument.

3

of Lading") were issued for the goods by Evergreen's agent Green Iberica Ltd. The Bill of Lading, paragraph 29(2) provides that,

> where the shipment covered by this Bill is to or from the U.S.A. . . . , all claims arising hereunder must be brought and heard solely in the U.S. District for the Southern District of New York . . . to the exclusion of any other forum. Except as otherwise set out herein, United States law shall apply to such claims.

En route from Portugal to France, the MV Patricia encountered severe weather in the Bay of Biscay, and fourteen containers, three of which contained Williams-Sonoma goods worth approximately $410,000, went overboard and were lost. This transpired on September 30, 2005.

Thereafter, on August 17, 2006, Plaintiff International Marine Underwriters, as subrogee of Williams-Sonoma, filed the instant action seeking damages for the value of the goods, plus interest and costs. On August 30, 2006, Defendant Evergreen answered and filed a cross-claim against Defendants MV Patricia and Patricia Conship alleging negligence and breach of contract and seeking indemnity or contribution.

On November 20, 2006, MV Patricia and Patricia Conship ("Movants") filed a motion to dismiss for lack of personal jurisdiction, pursuant to 12(b)(2). Plaintiffs and Defendant Evergreen oppose the motion.

## Discussion

On a 12(b)(2) motion to dismiss for lack of personal jurisdiction where no discovery has taken place, the plaintiff

4

must simply allege facts that make a prima facie showing of jurisdiction. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir. 1996). The Court must view everything in a light most favorable to the non-movant. Packer v. TDI Systems, Inc., 959 F. Supp. 192, 196 (S.D.N.Y. 1997); Loria & Weinhaus, Inc. v. H.R. Kaminsky & Sons, Inc., 80 F.R.D. 494, 497-98 (S.D.N.Y. 1978).

Plaintiffs can meet this burden by alleging facts that make a prima facie showing that Movants are bound by the forum selection clause in the Bill of Lading between Evergreen and Williams-Sonoma.[2] Forum selection clauses are presumed enforceable in federal courts sitting in admiralty, unless the party opposing demonstrates that enforcement would be unreasonable, unjust, or against public policy. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972).

Movants do not argue that the clause is unreasonable, unjust, or against public policy, but rather argue that the forum selection clause in the Bill of Lading is not binding on them because their relationship with Evergreen was too attenuated. Movants argue that Clause 33 of the Time Charter, which provides "Charterers and/or Agents . . . authority to sign Bill [sic] of

---

[2] Plaintiffs could also attempt to establish jurisdiction by satisfying Fed. R. Civ. P. 4(k)(2) or New York CPLR §§ 301 and 302 and constitutional due process. The Court does not address these bases for personal jurisdiction because it finds jurisdiction based on the forum selection clause.

5

Lading on behalf of Masters and/or Owners" (Ex. C, ¶ 33), should
be construed narrowly to mean that only Sea Consortium, the
original charterer, or Patricia Conship's agents could sign bills
of lading on behalf of Patricia Conship.

Plaintiffs and the Court disagree with this narrow
interpretation.  The Time Charter says "Charterers" (Ex. C, ¶ 33)
(emphasis added), rather than "the Charterer" or "Sea
Consortium," thereby contemplating charterers other than Sea
Consortium.  Other language in the Time Charter implicitly
authorizes the issuance of the Bill of Lading: Clause 34 of the
Time Charter between Patricia Conship and Sea Consortium states
that "Charterer's or sub-Charterers' Bills of Lading form to be
used." (Weigel Aff. Ex. C) (emphasis added).  A slot charter is a
more specific type of sub-charter. See Ins. Co. Of North America
v. S/S American Argosy, 732 F.2d 299, 303 (2d Cir. 1984) ("A
charter party is the hiring of the whole or part of the vessel.")
(emphasis added).

Bison Pulp & Paper Limited v. M/V Pergamos, 1995 WL 880775
(S.D.N.Y. Nov. 29, 1995) supports personal jurisdiction over
Movants.  Bison Pulp is an admiralty suit, in which plaintiff
sought recovery for goods damaged in transit from Brazil to ports
in Ireland and Germany.  Bluecoral owned the ship, Africa Ocean
Lines chartered the ship, and Marmaras operated and crewed the
ship.  Bluecoral entered into a bill of lading with a merchant to

6

transport goods aboard the ship. The bill of lading's forum selection clause stated that, "[a]ny dispute arising under this bill of lading shall be decided in the country where the carrier has his principal place of business . . ." The court ultimately determined that "carrier" referred to the owner, Bluecoral, with its principal place of business in Cypress.

The plaintiff merchant brought suit in the Southern District of New York. Defendant Marmaras, the ship's operator, and defendant Northland, the company who purchased the ship from Bluecoral after the events at issue took place, moved to dismiss for lack of personal jurisdiction over Northland and lack of in rem jurisdiction over the ship. Northland sought to enforce the bill of lading's forum selection clause mandating litigation in Cypress.

Plaintiff argued that even if the forum selection clause applied to any suit brought by plaintiff against Bluecoral, the clause did not apply to suit against the three moving defendants because they were not parties to the bill of lading. Magistrate Dollinger thought this argument "miss[ed] the mark":

> We start by noting that the wording of the Bills of Lading does not support plaintiffs' argument. The operative language simply provides that "[a]ny dispute arising under this bill of lading shall be decided in the country where the carrier has his principal place of business····" If the drafters of the Bills had intended to draw the distinction suggested by plaintiffs, they could have made that point clear by stating that "any disputes with the carrier or the owner arising under this bill of lading" were to be

7

adjudicated in the specified forum. That they did not
do so is scarcely surprising, since such a result could
lead to an awkward and inefficient splitting of claims
and their litigation in separate, widely dispersed
fora. For example, if the forum selection clause
governs only claims against the carrier and owner, the
plaintiffs might be compelled to sue separately in
another country against Marmaras since it is based in
Greece and might not have a sufficient presence in Cyprus.

Id. at *14.   The Bill of Lading in this case similarly states

"all claims" instead of specifying only disputes between

Evergreen and Williams-Sonoma.

The case of Joo Seng Hong Kong Co., Ltd. v. S.S. Unibulkfir,

483 F. Supp. 43 (S.D.N.Y. 1979) (Sand, J.) is also helpful to

Plaintiffs:

Despite the difficulty of distilling consistent
principles from the existing case law, two things can
be said with some certainty. The first is that more
than one party is frequently held liable to a cargo
interest under a COGSA[3] bill of lading.  Obviously

---

[3] As explained by Judge Sand,

Every bill of lading which evidences a contract for the
carriage of goods by sea to or from ports of the United
States, in foreign trade, including bills of lading
issued under or pursuant to a charter party, is subject
to COGSA. 46 U.S.C. §§ 1300 and 1301(b). COGSA imposes
In personam Liability upon "carriers" of goods by sea.
46 U.S.C. § 1302. Although the statute provides no
precise definition for the term "carrier", it clearly
suggests that the term is not limited to a party who
signs the bill of lading. Under the definitional
section of COGSA, the "term 'carrier' Includes the
owner or the charterer who enters into a contract of
carriage with the shipper." 46 U.S.C. § 1301(a).

Joo Seng, 483 F. Supp. at 46.

then, there can be more than one COGSA carrier of a
given shipment. Second, the courts have not hesitated
to impose liability on charterers or owners who are
non-signatories to a bill of lading and who cannot in
any real sense of the word be said to have issued the
bill. In doing so, the courts typically look for some
evidence tying the party to the bill involved.

Id. at 46 (internal citations omitted).  Movants attempt to

distinguish this case, arguing, "Although, as the Court in Joo

Seng explained, the Court may impose liability on an owner who

neither signed not [sic] negotiated the bill of lading, they only

do so when the bill of lading has been signed on behalf of the

master or by an authorized charterer." (Reply Mem. L. 3)

(internal citation omitted.)  They assert that Evergreen was not

an authorized charterer.

    However, if we follow Judge Sand's words and look for

evidence tying Movants to the Bill of Lading, Movants' attempt to

distinguish fails.  As already stated, the language of the Time

Charter authorized the Bill of Lading and Evergreen has

"repeatedly" issued bills of lading for the shipment of goods

aboard the MV Patricia.

    "[C]ourts have enforced forum selection clauses in bills of

lading against the owner, shipper or insurer of cargo even though

those parties did not sign or negotiate the bills of lading."

Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp.2d

118 (S.D.N.Y. 1997)).  It seems logical that if courts enforce

9

bills of lading against owners of cargo that were not parties to bills of lading, then this Court should enforce a bill of lading against the owner of the vessel and the vessel itself upon which the goods actually traveled, especially where that ship is a feeder. The owner of a feeder must anticipate that multiple sub-charterers will enter into bills of lading on its behalf.

Movants argue the Court lacks in rem jurisdiction over the MV Patricia because the Bill of Lading was issued by an unauthorized third party and not the vessel's charterer. In support of this argument they cite Ins. Co. Of North America v. S/S American Argosy, 732 F.2d 299, 303 (2d Cir. 1984). The case actually support's Plaintiffs' position. In American Argosy, the Circuit found that a ship could not be bound to the terms of a bill of lading issued by a third party who was not a charterer. The Circuit expressly distinguished the situation from one in which a charterer issues a bill of lading:

> A charterer is not one of several hundred customers contracting with the carrier for the carriage of a discrete package of goods. To the contrary a charterer . . . contracts for the use of the ship itself. "'A charter party is the hiring of the whole or a part of the vessel . . . and if it does not ex vi termini, convey a proprietary interest in the vessel, it certainly does pass a claim or interest in the vessel, recognized by the maritime law, the privilege to look upon her as answerable for the goods placed on board.'" Thus, the charterer has control of the ship, at least temporarily, and is expected to issue bills of lading. Even if the ship's Master does not see the bill, he is fully aware that one must exist; it is this awareness that underlies the ratification doctrine. "[T]he master must know [when he sets sail] if he has not

10

> himself signed any bills of lading that the charterer
> has done so, and to sail is to accept those
> outstanding."

Id. (internal citations omitted).  Plaintiffs have made a prima

facie showing that Evergreen was a charterer authorized to issue

the Bill of Lading.

## Conclusion

Based on the language of the Time Charter, the language of

the Bill of Lading, and the relevant case law, this Court has

personal jurisdiction over Patricia Conship and in rem

jurisdiction over the MV Patricia.  The 12(b)(2) motion is

denied.  The parties are directed to appear for a scheduling

conference on January 29, 2007 at 9:45am.


SO ORDERED.

Dated:          New York, New York
                January 11, 2007

                                    John F. Keenan
                                    JOHN F. KEENAN
                                    United States District Judge


11